# IN THE UNITED STATES DISTRICT COURT
# FOR THE NOTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| RODERICK B. JOLIVETTE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIVIL ACTION |
| v. | ) FILE NO. |
| | ) |
| | ) |
| DOUGLAS COUNTY | ) |
| | ) |
| Defendant. | ) **JURY TRIAL DEMANDED** |

_____

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff Roderick Jolivette, by and through his undersigned counsel of record, and files this Complaint for Damages against Defendant Douglas County showing the Court as follows:

## JURISDICTION AND VENUE

1.

Plaintiff brings this action under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000(e) et seq. (hereinafter, "Title VII) for race discrimination, and to recover reasonable attorneys' fees and costs as allowed under the aforementioned federal statutes.

2.

1

Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§1331, 1343 on the grounds that this action arises under Title VII.

3.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within the Northern District of Georgia.

## PARTIES

4.

Plaintiff is an individual residing in the State of Georgia.

5.

Plaintiff is subject to the jurisdiction and venue of this Court.

6.

Defendant is an employer and is a state polity in Georgia that is entitled to do business in Georgia.

7.

Defendant may be served with Summons and Complaint in this action through Phil D. Miller, Chairman of the Board of Commissions of Douglas County, at 8700 Hospital Drive, Douglasville, Georgia 30134.

8.

At all times relevant to this action, Plaintiff was an employee of Defendant.

9.

Defendant has employed fifteen or more employees for each working day in at least twenty weeks during each and every calendar year that is relevant to this action.

10.

Plaintiff has obtained a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") as to Defendant relating to his Title VII claim. See Exhibit A.

**FACTUAL BACKGROUND**

11.

Plaintiff hereby incorporates all previous Paragraphs as if fully restated herein.

12.

Defendant is a political subdivision within the state of Georgia and operates various local government services through its departments, including the Douglas County Fire Department.

13.

Plaintiff, a black male, was hired by Defendant to work as its Fire Chief EMS Director on January 25, 2021.

14.

Plaintiff was Defendant's first black fire chief.

15.

Prior to Plaintiff's arrival, Defendant's fire department's fire fighters were mostly white.

16.

Prior to Plaintiff's arrival, some white fire fighters complained about Plaintiff by posting on social media fearing Plaintiff would sue Defendant for racial discrimination because Plaintiff had sued another fire department for racial discrimination decades earlier.

17.

Once Plaintiff arrived, he sought to diversify the fire department's ranks to reflect the diverse community of Douglas County, including recruiting more black firefighters.

18.

Upon Plaintiff's arrival, many white firefighters resented Plaintiff as their superior and Plaintiff's diversity recruitment efforts.

19.

On or around December 12, 2022, former county commissioner Ann Guider and newly elected county commissioner Mark Alvarez summoned Plaintiff to a meeting where Plaintiff was instructed to fire Gabby Armstrong, a black employee of the Douglas County Fire Department without just cause.

20.

Plaintiff refused to fire Officer Armstrong.

21.

On or around January 27, 2023, Commissioner Alvarez instructed Plaintiff to terminate Demetrius Williams, a black employee of the Douglas County Fire Department, for allegedly having an out of state warrant.

22.

Officer Williams was involved in a dispute with some of the white firefighters who had threatened to tie Officer Williams around a pole. Officer Williams had previously complimented a white female employee of the City of Douglasville on her clothes and appearance which led to said female lodging a complaint with Nycole Miller, a white city council member.  Ms. Miller relayed this information to her spouse Nathan Britt, a white firefighter who in turn informed some of the other white firefighters.

23.

Ms. Miller, Mr. Britt, and many white firefighters were friends with Commissioner Alvarez – Commissioner Alvarez would bring food to some of the white firefighters.

24.

Upon information and belief, Commissioner Alvarez sought to have Officer Williams terminated because he was black and got into a dispute with some of the white firefighters, Ms. Miller, and the white female employee of Douglasville.

25.

Plaintiff refused to fire Officer Williams because the allegation regarding the out of state warrant was determined to be made in false light after an internal investigation. Officer Williams failed to appear in court in Alabama in a civil matter on or around January 24, 2023, which led to a pending bench warrant being issued in error.

26.

On or around February 16, 2023, Plaintiff met with Defendant's Interim County Administrator David Corbin to file a claim of discrimination toward Commissioner Alvarez.

27.

On or around February 20, 2023, when Plaintiff met with Mr. Corbin to follow up on the investigation about Commissioner Alvarez, Mr. Corbin said he did not give a damn about Plaintiff.

28.

On or around February 22, 2023, Plaintiff was placed on administrative leave by Mr. Corbin.

29.

On or around February 23, 2023, Plaintiff filed a charge of discrimination with the EEOC against Defendant.

30.

On or around February 25, 2023, Defendant changed the locks to Plaintiff's office.

31.

On or around March 8, 2023, Plaintiff received a letter from Defendant stating his leave was extended pending the investigation against him.

32.

On or around March 23, 2023, Plaintiff's leave was further extended.

33.

On or around March 31, 2023, Plaintiff received a letter stating he was terminated, thirty-six days after filing his EEOC charge.

34.

On or around May 1, 2023, Plaintiff's employment with Defendant was terminated.

35.

Upon being terminated, Plaintiff was replaced by Dr. Miles Allen.

36.

On or around March – April 2023, Defendant terminated Deputy Fire Chief Eric Phillips, a black male.

37.

On or around February 24, 2023, Deputy Chief Pablo Lugo told Deputy Chief Eric Phillips, "Chief ain't coming back."

38.

Officer Tanna Harris, a black female firefighter, had complained about not being trained by some of the white firefighters.

39.

Officer LaJoy Huges-Rembert & Officer Fred Dudley, black female and black male respectively, complained about how they were discriminated

8

against by some white firefighters due to the fact they were not being trained by them for supporting Plaintiff – Officer Dudley was called stupid.

40.

Some white firefighters made racially charged remarks about Officer Zione Kafunya, a black female firefighter from Africa, claiming she "ate people."

41.

Captain Zachmeyer, a white firefighter, called Plaintiff a nigger.

42.

Chief Rusty Shadix, a white male, stated some of the white firefighters were racist and were working to get Plaintiff fired.

43.

Captain Zachmeyer told Ms. Paula Austin to not allow Plaintiff to enter the fire administration building because of his race.

44.

## COUNT I
## RACE DISCRIMINATION IN
## VIOLATION OF TITLE VII

45.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

46.

Defendant discriminated against Plaintiff while he was employed by Defendant by, among other things, treating him less favorably than white employees and terminating his employment on account of his race.

47.

The effect of Defendant's conduct was to deprive Plaintiff of economic opportunities, and otherwise adversely affected Plaintiff's status as an employee because of his race.

48.

As a direct and proximate result of Defendant's actions, Plaintiff has experienced adverse effects to both his psychological, physical well-being, and other damages in an amount to be determined at trial.

### COUNT II
### RACE DISCRIMINATION IN
### VIOLATION OF 42 U.S.C. § 1981

49.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

50.

Defendant discriminated against Plaintiff while he was employed by Defendant by, among other things, limiting his ability to make and enforce contracts as compared to white employees and terminating Plaintiff on account of his race.

51.

Defendant discriminated against Plaintiff while he was employed by Defendant by, among other things, subjecting him to unequal punishment, pains, and penalties, as compared to white employees, disciplining and/or terminating Plaintiff on account of his race.

52.

As a direct and proximate result of Defendant's actions, Plaintiff has experienced adverse effects to both his psychological, physical well-being, and other damages in an amount to be determined at trial.

## COUNT III
## RETALIATION

53.

Plaintiff hereby incorporates all previous Paragraphs as if fully restated herein.

54.

By the above acts and practices, including the acts of Defendant terminating Plaintiff and/or placing Plaintiff on administrative leave, shortly

in response to Plaintiff's internal complaint and/or filing a charge of discrimination with the EEOC, Defendant and their agents have retaliated against Plaintiff for asserting his rights under Title VII of the Civil Rights Act of 1964 by condoning, encouraging and/or participating in the retribution.

55.

As a direct and proximate result of the conduct and acts of Defendant and their agent in violation of Title VII of the Civil Rights Act of 1964, Plaintiff has suffered and will continue to suffer irreparable injury, damage to his career and reputation, monetary and/or economic harm, for which he is entitled to an award of monetary damages and other equitable and/or injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for:

1) General damages for mental and emotional suffering caused by Defendant's misconduct;

2) Punitive damages based on Defendant's willful, malicious, intentional, reckless, and deliberate acts, including Defendants' ratification, condonation, and approval of said acts of its agents;

3) Back pay, front pay, and post judgment interest thereon as permitted by law;

4) Reasonable attorney's fees and expenses of litigation pursuant to 42 U.S.C. § 2000e-5(k);

5) Trial by jury as to all issues;

6) Prejudgment interest at the rate allowed by law;

7) Declaratory relief to the effect that Defendant's have violated Plaintiff's statutory rights;

8) Compensatory damages;

9) Injunctive relief enjoining Defendant from providing harmful employment information about Plaintiff to potential employers, and ordering Defendant to remove negative records from Plaintiff's personnel file attributed to Defendant's unlawful conduct;

10) All other relief to which Plaintiff may be entitled.

Respectfully submitted this 10th day of September, 2024.

/s/ David G. Cheng
CHENG LAW, INC.
DAVID CHENG, ESQ.
GEORGIA BAR NO. 762468

260 Peachtree St. NW<br>
Suite 2200<br>
Atlanta, Georgia 30303<br>
Tel: (334) 451-4346<br>
Fax: (312) 626-2487<br>
david@considerdavidcheng.com

*Attorney for Plaintiff*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that Plaintiff's Complaint for Damages complies with the type-volume limitations set forth in Rule 5.1 of the Local Rules of the Northern District of Georgia. Counsel hereby states that Plaintiff's Complaint for Damages has been typed in Times New Roman 14 point.

Respectfully submitted this 10th day of September 2024.

/s/ David G. Cheng
David G. Cheng
Georgia Bar No. 762468